## BEAUMONT–PORT ARTHUR BUS LINE, Inc., v. WILLIFORD et ux.

### No. 3026.

Court of Civil Appeals of Texas. Beaumont.

Jan. 7, 1937.

Rehearing Denied Jan. 13, 1937.

C. A. Lord, of Beaumont, for appellant.

F. S. Jones and W. R. Blain, both of Beaumont, for appellees.

WALKER, Chief Justice. ·

Washington boulevard is one of the main streets of the city of Beaumont, running from Railroad avenue on the east to the Southern Pacific railroad tracks on the west. The street is about 51 feet wide, with an esplanade 17 feet wide down the center of the street, and right and left drives on each side of the esplanade, paved with concrete from the curbs next to the side walks to the esplanade curb in the center. The esplanade is maintained as a part of the park system of the city, is covered with grass, and, at distances of about 50 feet, has small bunches of low shrubs, not high enough to obstruct the view across and up and down the center drives. Washington boulevard is thickly settled from one end to the other with but few vacant lots. The children living on the boulevard play in their front yards between their homes and the street curb, and across the street back and forth, and in and upon and up and down the esplanade. This condition is notorious and existed many years prior to August 8, 1934.

On August 8, 1934, and for many years prior thereto, appellees, F. W. Williford and wife, lived on the north side of Washington boulevard, about 600 feet east of the intersection of Park avenue and the boulevard. Their young son, Norman Richard Williford, about seven years old, lived with them, and it was his custom to play with his little friends in and across the boulevard and up and down the esplanade in the manner above stated.

Appellant, Beaumont-Port Arthur Bus Line, Inc., operates a bus line from the central part of the city of Beaumont to the city of Port Arthur. In leaving Beaumont, the busses drive out Park street to Washington boulevard, turn right into the boulevard on to the right-hand drive, and out the boulevard to Railroad avenue, and then to Port Arthur.

On the evening of August 8, 1934, as appellant's bus was driving down the boulevard on the right-hand side on its trip to Port Arthur, little Norman Richard Williford, playing with two of his little friends on the esplanade, stepped off the esplanade, one foot on the curb and one foot in the street, into the side of appellant's bus near the front hub cap, and received injuries which resulted in his death. This suit was brought by appellees as father and mother for damages suffered by them by reason of his death. Many grounds of negligence were pleaded

by appellees, answered by appellant by pleas of demurrers, general denial, contributory negligence, etc. Judgment was rendered in favor of appellees for $10,000 upon the findings of the jury that the speed of the bus was excessive, that the driver of the bus failed to sound the horn and failed to keep a proper lookout, and that these acts of negligence constituted proximate cause. The issue of unavoidable accident was submitted to the jury and found in favor of appellees. The jury found against appellees on the issue of discovered peril, and that the driver did not fail to have his bus under such control "that same could be quickly stopped if some one suddenly ran into the street from the esplanade."

Appellees concede error in the court's charge, which errors are patent and do not require a review at our hands. But appellant insists that, on the undisputed evidence, judgment should be rendered in this court in its favor. On this proposition we quote as follows from appellees' witnesses—Q. and A. reduced to narrative; James Bostic testified:

"We three boys were back about four or five feet in the esplanade when Norman Williford stepped off the curb and was struck. Russell Foles and I had been over to Russell's brother's, who lives on the north side of the boulevard, to get a water bottle to take back across the boulevard to Mr. White's. We saw Norman coming and waited there in the esplanade for him. We were standing there by the side of a little clump of bushes, and Norman Williford came out where we were and tapped us and stepped off the curb and was struck.

"We were not directly behind the thickest part of the bushes; we were right by them —by the edge of the bushes. At the end of the esplanade where Pennsylvania Avenue comes in, there was a number of round bushes, and there was some bushes up there right by Mr. White's—I don't know how many. We were standing between the bushes and the curb, I believe, just a little bit behind the bushes; about half of the body."

Russell Folse testified: "My name is Russell Folse. I knew Norman Richard Williford good. The other boy and I were just coming across the park the evening he was killed. We was coming back from Mr. White's house. My daddy sent me over there. I don't remember what for. I believe to bring a bed pan he had borrowed from him. Me and the other boy just com-

ing back. He had gone over with me, and was just coming back, and we just stepped in the park there he calls the estimate or something like that, just stepped up there and he tapped us last tag and just turned around, he had one foot off the curb and the bus passed by coming down Washington Boulevard, he just had one foot off the curb and the bus just went out to pass a car and it hit him and we wasn't looking right at it, we just saw it right after it happened like. I didn't hear any horn blowing out there or any warning."

Mrs. E. V. Richardson testified: "I have been living in Beaumont, and was living in Beaumont on or about August 8, 1934. I was not acquainted with Mrs. Williford before that time, but got acquainted with her at that time through an accident to her child. I took the child to a hospital with Mr. Bell. On that particular day I was driving my automobile out on Washington Boulevard from Avenue A. There is a stop sign on Washington Boulevard where Park Street crosses it, and while I was stopped there a bus came in front of me on Park and turned in front of me, going out Washington. I followed the bus up to the place of the accident. All the time I was about two car lengths behind the bus from Park Street, until I saw a car parked on the side of the curb, and I had already horned to go around the bus when I saw this car parked and I knew I couldn't make it, and I slowed up my speed and dropped behind the bus again. I should judge the bus was traveling at that time about 32 to 35 miles per hour, because I was going about 32. At the time before I approached the place I saw some children on the sidewalk. I saw one child go from the sidewalk to the street and upon the esplanade. He was running across the street from the sidewalk and the bus struck him. When the bus hit the child, he had one foot on the street and the other foot on the esplanade, and I had to skid just with the bus when it was skidding to stop my car, and my bumper was just against his when we stopped. That was after the child had been hit. I never did hear the bus sound any warning or blow any horn. There was no obstruction between the point where my car was parked and where the child was on the south curb line on the south traffic lane. I was about thirty or forty feet from the boy at the time I saw him go from the sidewalk over on the esplanade, and the bus was about ten feet from him at the time he went across in front of it, and the accident was done in just an instant. * * * At the

time the little boy was injured, it was sunshiny." The testimony was to the effect that the brakes on the bus were in good working condition, and at a speed of 12 miles per hour the bus could have been stopped within 12 feet. There was other testimony to the effect that the bus driver could have seen the boys on the esplanade from the time they crossed the street to the esplanade, and were in his open view from the time they entered the esplanade to the time of the accident. The driver had been on this run for possibly four years from 3 o'clock in the afternoon until midnight, passing up and down Washington boulevard once each hour, driving up and down the boulevard during the late hours when the children play in the streets. He testified that he knew that the children used the sidewalk, the driveway, and the esplanade for a playground in the manner above stated.

Appellant's proposition asking rendition of judgment in its favor is overruled. The evidence quoted above raised against appellant the issue of negligence upon which the lower court predicated its judgment.

Because of the errors committed by the trial court, conceded by appellees, the judgment of the lower court is reversed, and the cause remanded for a new trial.